Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. VICTOR J. LOPEZ *Defendant*. | Crim. No. 17-87 **OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of Defendant Victor Lopez's motion for compassionate release. D.E. 23, 26 ("Br."). The Government opposes the motion. D.E. 31 ("Opp."). Defendant's primary argument is that he should be released because of COVID-19, in light of his hypertension and asthma. The Court reviewed the parties' submissions and considered the motion without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). Defendant seeks immediate release due to the ongoing COVID-19 pandemic. For the following reasons, Defendant's motion is denied.

**I.     BACKGROUND**

   **A. Underlying Criminal Proceeding**

On July 6, 2017, Defendant pled guilty to a single-count indictment, charging him with possessing a firearm and ammunition after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1). D.E. 1, 14. Lopez did not have a plea agreement. Defendant's United States Sentencing Guidelines' total offense level was 21 because he committed the offense after having been convicted at least two felonies for violent crimes and/or controlled substances. Lopez's

criminal history category was V.  Defendant's earlier crimes included 2000, 2007, and 2013 felony drug convictions as well as a 2008 weapons offense (in which he fired a machine gun in Newark). Lopez also committed the current offense while on parole for the 2013 convictions.

Lopez's Guidelines range was 70 to 87 months, and the Government sought the high end of the range.  On November 1, 2017, the Court sentenced Defendant to 70 months and, over the Government's objection, ran his federal sentence concurrent to his sentence for violating parole. D.E. 20, 21.

Lopez is housed at MDC Brooklyn in New York.  He is currently scheduled to be released on May 14, 2023.

**B.  COVID-19 Pandemic**

COVID-19 "is caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person." *Coronavirus Disease 2019 (COVID-19)*, "COVID-19 Overview and Infection Prevention and Control Priorities in non-US Healthcare Settings," Centers for Disease Control and Prevention (Aug. 12, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/ overview/index.html#background.  "COVID-19 is primarily transmitted from person-to-person through respiratory droplets.  These droplets are released when someone with COVID-19 sneezes, coughs, or talks." *Id.*  Persons who contract the virus reflect a wide range of symptoms from asymptomatic to mild (including fever, cough, nausea, chest pain, and body pain) to severe to critical (including respiratory failure and death). *Id.*  Currently, there is no known cure for COVID-19.  As a result, standard precautions to prevent the spread of the virus include social distancing, proper hygiene, personal protective equipment (including use of a face mask), and maintenance of clean surfaces and devices. *Id.*

Numerous factors can increase a person's risk of severe illness if he/she contracts the virus. As a person get older, his/her risk for severe illness from COVID-19 increases. *COVID-19*, "Older Adults," Centers for Disease Control and Prevention (May 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. For example, persons in their sixties and seventies are at a higher risk than people in their fifties. *Id.* Those 85 or older are at greatest risk. *Id.* Adults 65 or older comprise 8 out of 10 COVID-19 deaths in the United States. *Id.* The following medical conditions put a person at increased risk of severe illness from COVID-19: cancer, chronic kidney diseases, chronic lung diseases (including asthma if it is moderate to severe), dementia or other neurological conditions, heart conditions such as coronary artery disease, weakened immune system from organ transplant, obesity, pregnancy, sickle cell disease, smoking, stroke or cerebrovascular disease, and type 2 diabetes mellitus. *COVID-19*, "People with Certain Medical Conditions," Centers for Disease Control and Prevention (May 13, 2021),[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

As of January 12, 2022, the United States had 61,732,283 COVID-19 cases, resulting in 837,274 deaths. *CDC COVID Data Tracker*, "United States COVID-19 Cases and Deaths by State," https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited Jan. 12, 2022).

**C.  Federal Bureau of Prisons**

The Federal Bureau of Prisons ("BOP") has taken the following steps to combat the virus. On March 13, 2020, the BOP modified its operations in accordance with its "COVID-19 Action

---

[1] The CDC previously provided two separate lists, one listing conditions that entailed a greater risk of severe illness and one setting forth conditions that might involve a greater risk.

Plan." *Federal Bureau of Prisons COVID-19 Action Plan*, Federal Bureau of Prisons (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Initially, all social visits, inmate movement, and official staff travel were suspended for thirty days. *Id.* Contractors who enter any BOP facility are screened for the virus, and initially admission was limited to contractors who performed essential services. *Id.* The BOP also conducts enhanced health screenings for staff in areas of "sustained community transmission." *Id.* The BOP screens all new inmates for virus "exposure risk factors and symptoms." *Id.* Any new inmate who is asymptomatic but has had a risk of exposure is quarantined. *Id.* According to the Government, the quarantine period is for a minimum of fourteen days or until cleared by medical staff. Opp. at 5. The Government indicates that new inmates who are symptomatic are placed in isolation until they test negative for the virus or are cleared by medical staff. *Id.* The Government also states that the BOP has taken the following steps to prevent the spread of the virus: group gatherings are limited to permit social distancing as much as possible, all staff and inmates have been issued face masks, and all staff and inmates are strongly encouraged to wear face masks when social distancing cannot be achieved. *Id.*

The BOP also has a COVID-19 vaccination plan. *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Mar. 11, 2021), https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. Inmates fall into different priority levels for vaccination: Priority Level 1 (for inmates in certain high priority jobs, including health service unit assignments); Priority Level 2 (inmates who are 65 or older, or who are, according to CDC criteria, at an increased risk for severe illness from the virus); Priority Level 3 (inmates who are aged 50 through 64 or who might be, according to CDC criteria, at an increased risk for severe illness from the virus); and Priority Level 4 (all other inmates). *Id.* As of January

12, 2022, the BOP had administered 282,378 doses of vaccine. *COVID-19*, "Vaccine Implementation," Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Jan. 12, 2022).

As of January 12, 2022, the BOP COVID-19 statistics are as follows: (1) currently, 4,377 inmates and 928 staff have confirmed positive tests; (2) 42,491 inmates and 8,944 staff have recovered; and (3) 275 inmates (11 while on home confinement) and 7 staff have died. *COVID-19 Cases*, Bureau of Prisons (last visited Jan. 12, 2022), https://www.bop.gov/coronavirus/index.jsp. MDC Brooklyn – where Defendant is housed – currently has 183 positive inmates and 2 positive staff members. *Id.* In addition, 382 inmates and 128 staff have recovered. *Id.* The facility has reported 1 inmate death due to COVID-19. *Id.*

### D. The Parties' Arguments

Defendant is 41 years old and asserts that he is more susceptible to adverse consequences if he were to be infected due to his asthma, hypertension, and "addiction disease comprising (sic) his immuno (sic) capabilities[.]" Br. at 3. Lopez continues that MDC Brooklyn fails to provide a safe environment as to the virus. *Id.* at 6-7. He also takes issue with his PATTERN score and argues that his plea was involuntary and that he had ineffective assistance of counsel, in light of the Supreme Court's decision in *Rehaif v. United States*, 588 U.S. --, 139 S. Ct. 2191 (2019). *Id.* at 3-5. Lopez adds that he has shown exemplary conduct and post-sentencing rehabilitation. *Id.* at 6.

The Government opposes Defendant's motion, arguing that Defendant fails to meet his burden because he is now vaccinated after having fully recovered from COVID-19. Opp. at 5. The Government notes that Lopez tested positive for COVID-19 on December 23, 2020 but was asymptomatic. *Id.* at 3, Ex. D at 95-96, 163. Defendant's records do not, the Government asserts,

5

reflect that he had any post-COVID syndrome. *Id.* at 3, Ex. D at 95. The Government continues that Defendant's medical records also undercut his claims as to the medical treatment that he has received and is receiving. *Id.* at 3, 7, Ex. D at 58, 60. The Government also argues that the Section 3553(a) factors militate against his release. *Id.* at 7-9.

Defendant wrote to the Warden of FCI Fort Dix (where he was housed at the time), seeking his release based on his COVID concerns and PATTERN score. Opp. Ex. B. The Warden denied Defendant's request. *Id.* Although Defendant filed the instant motion before receiving a response from the Warden, the Government does not contest that Lopez has met the exhaustion requirement. Opp. at 9.

## II. LEGAL STANDARD

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a)* to the extent that they are applicable, if it finds that—
>
> (i) *extraordinary and compelling reasons warrant such a reduction*; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and *a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)*;

> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
>
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added). As noted, the Government is not contesting that Defendant has satisfied the statutory exhaustion requirement.

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13. U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The application notes to the section provides four circumstances that can be considered extraordinary and compelling: (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons. *Id.* cmt. n. 1(A)-(D). In *United States v. Andrews*, 12 F.4th 255, 259-60 (3d Cir. 2021), the Third Circuit found that the policy statement was not binding on courts but nevertheless found that the statement could provide useful guidance.

Pursuant to Section 3582(c)(1)(A), the Court must also consider the factors listed in 18 U.S.C. § 3553(a). They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses of Defendant. *Id.*

### III. ANALYSIS

The Court finds that Lopez has not met his burden of demonstrating extraordinary and compelling reasons to justify his release. The Court also finds that he has failed to show that the Section 3553(a) factors support his release. As a threshold matter, Defendant's arguments as to the impact of *Rehaif*, along with his ineffective assistance assertions are not properly raised under 18 U.S.C. § 3582(c)(1)(A). Instead, Defendant should seek the appropriate *habeas* relief, if he believes that he has good grounds to do so. The Court does not consider such arguments in deciding the current motion.

Turning to Defendant's arguments concerning the pandemic, his hypertension and asthma appear well-controlled. As to Defendant's addiction leading to him being immunocompromised, he does not provide sufficient information for the Court to properly analyze the argument. In addition, Lopez already had COVID-19 and recovered; he has not provided medical evidence of any "long-haul" symptoms. The CDC reports that "[c]ases of reinfection with COVID-19 have been reported, but remain rare." *COVID-19*, "Reinfection with COVID-19," Centers for Disease Control and Prevention, (last update Aug. 6, 2021), https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html. Importantly, Lopez has since been vaccinated, which increases his chances against reinfection and also helps protect against severe illness should he be reinfected. *COVID-19*, "Omicron Variant: What You Need to Know," Centers for Disease Control and Prevention, (last visited January 12, 2022), https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html. *See also United States v. Mendoza*, No. 06-cr-167, 2021 WL 1312920, *7 (W.D. Pa. Apr. 8, 2021) (finding that a defendant who had recovered from COVID-19 and was later vaccinated had failed to show that he still faced a substantial risk from the virus). Finally, there are a number of positive cases currently at MDC Brooklyn. Unfortunately, the

8

increased infection rate reflects a surge of positive cases in American society as a whole due to the Omicron variant; such surges are not limited to BOP facilities. *See, e.g.*, "Omicron is spreading at lightning speed. Scientists are trying to figure out why," npr (Dec. 31, 2021), https://www.npr.org/sections/goatsandsoda/2021/12/31/1067702355/omicron-is-spreading-like-wildfire-scientists-are-trying-to-figure-out-why.html.

However, even if Lopez had demonstrated extraordinary and compelling circumstances, the Court would nevertheless deny his motion under Section 3553(a). Over the Government's objection, the Court sentenced Defendant to the low end of the Guidelines range and ran his sentence concurrent to his state sentence for violating parole. Yet, the current matter represented Defendant's second felony firearms offense, and he has numerous felony drug convictions. Indeed, he committed the current offense while on parole. The seriousness of the offense, Defendant's long criminal history, and the need for specific deterrence outweigh any of Defendant's arguments as to rehabilitation.

## IV. CONCLUSION

For the foregoing reasons, and for good cause shown,

It is on this 12th day of January 2022 hereby

**ORDERED** that Defendant's motion for compassionate release, D.E. 23, 26, is **DENIED**; and it is further

**ORDERED** that the Clerk's Office shall deliver a copy of this Opinion and Order to Defendant by regular mail and certified mail return receipt.

John Michael Vazquez, U.S.D.J.